Case 2:20-cv-00213 Document 89 Filed on 09/16/21 in TXSD Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
September 16, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BRIAN KEITH BALENTINE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-213 |
| | § | |
| BENJAMIN P. BRAKO, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ADOPTING MEMORANDUM AND RECOMMENDATION

Plaintiff Brian Keith Balentine, proceeding pro se and *in forma pauperis*, filed a motion for preliminary injunction (D.E. 1-2; D.E. 12), to which Defendants Benjamin P. Brako and Joni White have filed a response (D.E. 55). United States Magistrate Judge Jason B. Libby entered a Memorandum and Recommendation (M&R), recommending that the Court deny Balentine's motion. D.E. 68. Pending before the Court are Balentine's objections to the M&R. D.E. 72. For the reasons discussed below, the Court OVERRULES Balentine's objections and ADOPTS the findings and conclusions of the Magistrate Judge.

### STANDARD OF REVIEW

The district court conducts a de novo review of any part of the magistrate judge's disposition that has been properly objected to. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000). As to any portion for which no objection is filed, a district court reviews for clearly erroneous factual findings

and conclusions of law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam).

## DISCUSSION

### I.   Bias

Balentine begins with a general assertion that the Magistrate Judge's findings and conclusions "appear to be biased" and based only on the *Martinez* Report.[1]  D.E. 72, p. 4. This objection does not identify any specific error but merely disagrees with the Magistrate Judge's analysis.  The district court's review is not intended to be a second bite at the apple. *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998). Consequently, objections must be specific in complaining of the magistrate judge's analysis of the case.  Fed. R. Civ. P. 72(b)(2). Because the objection is not specific, it is OVERRULED  on procedural grounds.

As demonstrated more fully below in the context of Balentine's specific complaints, the Court finds that the Magistrate Judge applied the proper standards and issued findings of fact and conclusions of law that were appropriate in this case. Consequently, the objections based on alleged bias or failure to properly consider the entire record are OVERRULED  on substantive grounds.

### II.   The Magistrate Judge Properly Considered the *Martinez* Report

**Admissible Evidence**.  Balentine first argues that the *Martinez* report contains hearsay, is not authentic, and is not reliable or trustworthy.  D.E. 72, p. 4.  It is true that

---

[1]   D.E. 36 (original *Martinez* report), 66 (supplemental *Martinez* report).  A *Martinez* report refers to the administrative record pertaining to grievance matters.  *See Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978).

the *Martinez* report contains documents that recite hearsay involving inmate and Texas Department of Criminal Justice (TDCJ) staff investigative statements. However, the Magistrate Judge did not consider the truth of those assertions. Fed. R. Evid. 801(c)(2) (a matter is inadmissible hearsay only if offered for the truth of the matter asserted).

The purpose for the submission and review of the *Martinez* report was to determine what actions, if any, Defendants claim to have taken. The Magistrate Judge was not concerned with whether the information on which they acted was truthful or whether they actually solved Balentine's problems. The issue at the preliminary injunction stage is only a matter of the probability of success, given the respective positions of the adversaries. The administrative proceedings are useful to understand the agency actions at issue—none of which are in material dispute. The hearsay objection is OVERRULED.

Furthermore, the *Martinez* report is properly authenticated as containing records of a regularly conducted activity in a signed and certified document. D.E. 36, p. 2. As such, the business record is admissible for the limited purpose to which the Magistrate Judge put it: to evidence the actions Defendants took in response to Balentine's complaints. *See* Fed. R. Evid. 803(6) (exception to hearsay for business record), 902(11) (certified business record is sufficient authentication). Balentine has not offered any evidence to suggest that the *Martinez* report is not a reliable or trustworthy record of agency action. The objections to authenticity, reliability, and trustworthiness are OVERRULED.

**No Fact Dispute**. While Balentine does not make specific legal objections regarding the evidentiary force of materials in the *Martinez* report other than hearsay, he

does go through the investigations reflected in that report so as to suggest that they were not adequate to establish any underlying facts. D.E. 72, pp. 4-7. A *Martinez* report may not be used to resolve disputed facts when it conflicts with pleadings or affidavits. *Wiley v. Thompson*, 234 F. App'x 180, 182 (5th Cir. 2007).

However, the Magistrate Judge did not use the *Martinez* report's collection of administrative records to resolve any dispute regarding whether the underlying events actually happened as Balentine or the other inmates say they did. Instead, the question is whether the TDCJ staff response to the disputed events is likely to support or defeat a finding of deliberate indifference for purposes of determining likelihood of success for the imposition of injunctive relief. The Court OVERRULES Balentine's objection that the *Martinez* report was used to resolve disputed issues of material fact.

**Handling of Investigations**. Sergeant Benjamin P. Brako investigated allegations of sexual assault and sexual harassment leveled against Balentine at the McConnell Unit. In conducting his investigation, Brako interviewed inmates who have filed grievances against Balentine and other randomly selected inmates who lived near him. *See e.g.*, D.E. 36-1, pp. 15, 23, 26. Balentine objects to the accuracy of Brako's investigation and to statements made by David Cook, Glen Abney, Patrick Golden, Anthony Taylor, and other anonymous inmates at the McConnell Unit.

More specifically, Balentine claims that Brako's investigation was biased and self-serving. D.E. 72, p. 4–8. As discussed earlier, while the Magistrate Judge discussed the conflicting facts at length, he did so not for the purpose of resolving the disputes, but for the purpose of understanding what Defendants claim to have done in response to

4 / 15

Balentine's complaints. The Court OVERRULES the objection to the Magistrate Judge's review of the facts in the underlying events because they supply only background or context, and fact issues were not resolved.

**Confrontation Rights**. Finally, Balentine argues that the *Martinez* report violates the Sixth Amendment's Confrontation Clause. D.E. 72, p. 7 (citing the criminal cases of *Crawford v. Washington*, 541 U.S. 36 (2004) and *United States v. Holmes*, 406 F.3d 337, 348 (5th Cir. 2005)). The Confrontation Clause is meant to protect criminal defendants and generally is not applicable in civil cases. *See generally*, *United States v. Williams*, 447 F.2d 1285, 1291 (5th Cir. 1971). His objection based on the Sixth Amendment is OVERRULED.

Balentine's complaint in this regard could also be construed as asserting the right to conduct discovery, as he states that he has not been able to depose his accusers. This proceeding is at the stage of a request for preliminary injunctive relief. By its nature, it is adjudicated before completion of the stages of trial preparation, including discovery. *See generally*, *Hinton v. Dick's Sporting Goods, Inc.*, 2:13CV237-KS-MTP, 2013 WL 6384601, at *2 (S.D. Miss. Dec. 6, 2013) (the right to discovery applies prior to fact findings regarding permanent injunctive relief, unlike in the case of probability findings regarding preliminary injunction). Therefore, the incomplete status of discovery is not an appropriate basis for the assertion of error.

Moreover, Balentine has not demonstrated how deposing his alleged accusers would impact the determination of whether the TDCJ staff members acted with deliberate indifference in response to his housing complaints. The Court OVERRULES Balentine's

objection to proceeding with his claim for preliminary injunctive relief prior to conducting discovery.

### III. Balentine Failed to Satisfy the Required Elements for a Preliminary Injunction

Balentine does not dispute the four-part rubric for granting a preliminary injunction. *See* Fed. R. Civ. P. 65; *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 463–64 (5th Cir. 2020). He only disagrees with the Magistrate Judge's conclusion that he failed to satisfy each of the four requirements. While Balentine's failure to satisfy any one of the four is fatal to his request for injunctive relief, each is considered below.

#### a. Substantial Likelihood of Success

##### i. Eighth Amendment Claim

Balentine's Eighth Amendment claim is that TDCJ is imposing cruel and unusual punishment by failing to protect him from assault by other inmates. Balentine again objects to the Magistrate Judge's analysis, suggesting that he gave too much credit to Defendants' evidence and not enough to his own. D.E. 72, p. 8. Balentine's Eighth Amendment objection is based on a misunderstanding of the cruel and unusual punishment/failure to protect/deliberate indifference inquiry.

It is not enough to show that a better investigation would have substantiated Balentine's complaints. Deliberate indifference requires more than negligence; deliberate disregard is required. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). And evidence of an effort to address the issue controverts such deliberate disregard.

> [P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm

> ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions[.]" Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

*Id*. at 844–45 (citations omitted).

The Court accepts that TDCJ staff knew that Balentine, as a homosexual man of small stature, was vulnerable to assault. The question on the merits of this case is whether they acted appropriately with that knowledge. Defendants had placed Balentine in safekeeping custody until allegations arose that he was exhibiting aggressive behavior toward the others who were in safekeeping custody with him.

Thereafter, they placed Balentine in the general population and moved him several times, with the possibility that he would find a general population that would not pose a danger to him. Some of those efforts allegedly failed. He complained of assaults at the Terrell Unit. In response, he was held in restricted housing until the Unit Classification Committee ordered him to be transferred. At first, he was transferred to the Byrd Unit, where he was kept in a solitary cell—still awaiting transit—and did not suffer an assault. When released into the general population at the Stringfellow Unit, he complained that he was being monitored by another inmate, which made him feel threatened, but admitted that he had not been assaulted. This is some evidence that Defendants were not deliberately indifferent, but were trying to find a solution that took into consideration the needs of the different inmate populations and the risks they posed.

Transfer from a known dangerous housing assignment to a less dangerous one is a fact that negates "deliberate indifference." *Johnson v. Johnson,* 385 F.3d 503, 526 (5th Cir. 2004) (stating that actions such as "ordering further investigation or separating plaintiff from a particular inmate who had been threatening him" may have been reasonable responses to complaints of rape and torture by prison gangs); *see Gomez v. Wheeler,* No. 1:12–CV–084–BL–ECF, 2013 WL 373302, at *3 (N.D. Tex. Jan. 31, 2013) (holding that prison officials did not act with deliberate indifference for refusing to house plaintiff in protective custody because they conducted investigations and found his claims to be unsubstantiated); *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) ("[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety.").

To sustain Balentine's claim, it is not enough to find that Defendants were aware of the problem. The Magistrate Judge was correct to be concerned with whether an investigation was conducted or measures taken and not on whether Defendants achieved the correct result. Balentine relies only on his speculation that Defendants did not try hard enough. Nothing in his evidence shows that the failure of the investigation to substantiate his claims was intentional or a conscious disregard of the risk to Balentine.

Balentine has not demonstrated a likelihood that, on trial of the merits, Defendants would be found to have consciously disregarded Balentine's vulnerability to risk under the apparent circumstances of this case. While Balentine is correct that there is some evidence on which the trier of fact could find in his favor on all issues involved in the merits of the case, the question is not one of "some evidence" or whether he raised a

disputed issue of material fact. *See* D.E. 72, p. 13 (complaining that a trier of fact could find in his favor). The question is whether he has a substantial likelihood of success on the claim, given all of the circumstances. The Court concurs with the Magistrate Judge that Balentine has not satisfied this element. The objection is OVERRULED.

### ii. Procedural Due Process

Balentine contends that he was accused and punished without procedural due process. D.E. 72, p. 14. More specifically, he contends that his removal from safekeeping status and subsequent transfer from the McConnell Unit imposed atypical and significant hardships.[2] *Id*. at 14–16. To state this claim, Balentine must show that Defendants' actions are depriving him of a constitutionally protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As the Magistrate Judge set out in full, Balentine does not have a protected liberty interest in his housing classification or prison assignment. D.E. 68, p. 13.

Rather than establish a protected liberty interest, Balentine's objection focuses on labeling the housing reassignments as punishment for acts he denies having done. Disciplinary proceedings that result in sanctions do not trigger procedural due process rights unless the punishment is atypical and significant. According to well-settled precedent, sanctions that are "merely changes in the conditions of [an inmate's] confinement," do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).

---

[2] Balentine also alleges that the allegations of sexual harassment harmed his chances for parole. Balentine has not provided any evidence on this issue and has not shown that he was entitled to release under mandatory supervision under Texas law.

While Balentine alleges that his risk of sexual assault is an atypical and significant punishment that deprives him of a protected liberty interest, these claims are properly evaluated under the Eighth Amendment. *See generally*, *Cantu v. Jones,* 293 F.3d 839, 844 (5th Cir. 2002) (describing the deliberate indifference analysis that applies). Eighth Amendment claims generally do not implicate procedural due process. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990) (quoting *Carey v. Piphus*, 435 U.S. 247, 259 (1978)). When a constitutional violation is associated with a staff member's intent, any state procedural protections would be ineffective and no claim arises from their absence. *See id*. at 129-130 (emphasizing that it is a critical issue that due process is afforded by the state, and is not logically applicable to intentional acts of individual staff members).

Balentine cites three cases in support of his argument. Each is distinguishable. He cites *Doe v. Sullivan County, Tennessee*, 956 F.2d 545, 557–58 (6th Cir. 1992), arguing that classification procedures by prison officials created a protected liberty interest. D.E. 72, p. 16. At best, *Doe* stands for the proposition that a state prison facility must take into consideration whether an inmate is a homosexual and vulnerable to attack when making housing assignments. This decision was based on the state's mandatory language in its policy manual. That language did not ensure any particular classification of housing for such persons, only that the prisoner's status and records of prior housing be reviewed in the process of assigning housing at the time of admission to a new facility.

Balentine's argument is not that Defendants acted in ignorance by not reviewing these matters but that they acted in conscious disregard of his status and past housing experience. And he has not demonstrated that the policy manual applicable in this case contained any such mandatory language. Therefore, the Sixth Circuit *Doe* opinion does not apply.

Moreover, Balentine's reliance on this argument is limited by the Supreme Court's treatment of prison regulations in *Sandin*. The Supreme Court departed from the focus on mandatory or permissive language in prison regulations and held that while regulations may confer a liberty interest on a prisoner, they do so only if a loss of that liberty interest "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. Balentine's transfer did not present atypical and significant hardships, and he has not shown that he has a protected liberty interest created by Texas law. *See also Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (per curiam) (holding that Texas inmates do not have a protected liberty interest in their custodial classification).

Balentine argues that *Neal v. Shimoda*, 131 F.3d 818, 830–31 (9th Cir. 1997), stands for the proposition that "prisoners labeled as sex offenders who had not been criminally convicted of a sex offense are entitled to the same procedural protections as for a disciplinary proceeding." D.E. 72, p. 16. In *Neal*, Hawaiian prison officials labeled certain prisoners as sex offenders even if they were not convicted as such, and those that are labeled as sex offenders were required to participate in a mandatory treatment program before being eligible for parole. *Neal*, 131 F.3d at 821–22.

The Ninth Circuit held that "the stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections." *Id*. at 830. The type of deprivation identified in *Neal* is not applicable here. Balentine is not forced to undergo any mandatory program, nor is there any evidence that he has been labeled in a stigmatizing manner by prison officials. The *Neal* case does not apply.

Citing to *Wolff v. McDonald*, 418 U.S. 539 (1974), Balentine argues that he is entitled to a hearing based on his protected interests. D.E. 72, p. 16. In *Wolff*, the Supreme Court held that inmates in Nebraska were entitled to procedural due process protections in disciplinary hearings that could result in the forfeiture of an inmate's good-time credits due to a state statute protecting such credits. *Id*. at 557. Neither that state statute nor an equivalent Texas statute is at issue here. Balentine's rights—which are materially different from good time credits—are determined by constitutional principles already addressed. The *Wolff* case does not apply.

In sum, Balentine has not shown a substantial likelihood of success on either his Eighth Amendment or procedural due process claims. He has failed to demonstrate the first part of the test for imposing a preliminary injunction.

### b. Balentine Failed to Show That He Will Suffer Irreparable Harm

**Conclusory Objection**.  Balentine objects that he has "already established" that he has been harmed and continues to be harmed in the absence of injunctive relief. D.E. 72, pp. 16-17. To the extent that he does not more fully brief this objection, it is waived

and OVERRULED. However, the Court considers other portions of his objections to determine if he adequately established his claim to irreparable harm in the context of other arguments.

**Stringfellow Unit Letter**. Balentine objects that the Magistrate Judge failed to credit his letter, which was filed as an independent document on the docket of this case. *See* D.E. 72, p. 10 (referencing D.E. 60). In this submission, Balentine admits that his suggestion—that TDCJ is spying on him and setting him up for assault in retaliation for filing this action—is speculative. And while he claims to have been assaulted, he does not state that he reported the assaults to prison officials for investigation. Instead, Offender Rosales states that Balentine told him that reporting the Stringfellow Unit assaults would be futile. D.E. 61.

While this may be viewed as some evidence that Balentine was assaulted in the Stringfellow Unit, it does not support his claim for failure to protect because—according to his own evidence—he did not report it and any suggestion that TDCJ staff was aware of it is speculative. Neither does it support the imminent risk of irreparable harm because he is no longer housed at the Stringfellow Unit. The objection to the failure to consider the Stringfellow letter is OVERRULED.

**General Risk**. Balentine stated that he suffers irreparable harm due to the possibility of being sexually assaulted. He contends that while he was not sexually assaulted at the Byrd Unit and has not been assaulted in the Stringfellow Unit, he lives in fear of being harmed. D.E. 72, p. 11. To satisfy the element of irreparable harm, Balentine must show that the injury is imminent and likely—not just possible—in the

13 / 15

absence of an injunction. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). The Court OVERRULES Balentine's objection that he has demonstrated irreparable harm. He has failed to satisfy the second requirement for preliminary injunctive relief.

### c. Balentine Does Not Meet the Remaining Elements.

Balentine indicates that he satisfies the third and fourth requirements for a preliminary injunction because "[t]he harm that he has already suffered and continues to suffer is much greater than any harm the Defendant[s] could ever suffer if injunctive relief were granted." D.E. 72, p. 17. Balentine's argument is conclusory. And it is OVERRULED as procedurally deficient.

The Magistrate Judge properly found that the threatened injury did not outweigh Defendants' interest in maintaining discipline in the prisons and that it is not in the public's interest to make a decision adverse to Defendants without a more developed record. Therefore, Balentine has failed to satisfy the third and fourth requirements for the issuance of a preliminary injunction.

## CONCLUSION

Having reviewed the findings of fact, conclusions of law, and recommendations set forth in the M&R, Balentine's objections, and all other relevant documents in the

record, the Court OVERRULES Balentine's objections (D.E. 72) and ADOPTS as its own the findings and conclusions of the Magistrate Judge (D.E. 68). Balentine has failed to satisfy all four parts of the applicable test. The Court DENIES the motion for preliminary injunction (D.E. 1-2; D.E. 12).

ORDERED this 16th day of September, 2021.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE